**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RODNEY HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-2996 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| THOMAS DART, Sheriff of Cook County, | ) | |
| and COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>ORDER</u>**

This case involves an inmate's delayed treatment for a bad toothache. Plaintiff Rodney Harvey experienced a high level of pain in his tooth while detained at the Cook County Jail. He sought treatment by submitting a Health Service Request Form on December 3, 2018. But he didn't see the Jail's dentist until December 18, about two weeks later.

At that appointment, the dentist referred Harvey for a tooth extraction at Stroger Hospital's oral surgery clinic. Harvey waited for over a month. And while he waited, his pain continued, and he developed pain in another tooth, too. He did not go to the clinic until January 24, 2019. At that appointment, the oral surgeon extracted both teeth.

Harvey sued Cook County Sheriff Tom Dart and Cook County for alleged failures in his dental treatment under section 1983. He claims that the delay caused him significant pain and therefore violated his rights under the Fourteenth Amendment. He brings claims on his own behalf and on behalf of a class of similarly situated detainees.

Sheriff Dart and Cook County moved to dismiss. For the reasons that follow, the Court grants in part and denies in part the motion to dismiss.

**Background**

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Rodney Harvey was detained at the Cook County Jail beginning in 2018. *See* Am. Cplt., at ¶¶ 2, 8 (Dckt. No. 44). He had a bad tooth, and it hurt. *Id.* at ¶ 8. The complaint does not reveal when the tooth started hurting, or when the pain became significant. But the bottom line is that Harvey had a toothache, and he wanted treatment.

When detainees at the Cook County Jail experience dental pain, they must submit a Health Service Request Form to receive treatment. *Id.* at ¶ 7. If a detainee "complain[s] of pain rated greater than 5" (on a scale of 1 to 10), the Jail's policy requires a dentist to evaluate him within three business days. *Id.*

Maybe that interpretation of the complaint is too strong. Plaintiff alleges that inmates with a pain greater than 5 out of 10 "*should* be evaluated by a dentist within 3 business days in accordance with Cook County policy." *Id.* (emphasis added). "Should" has some wiggle room. Does "should" mean "must"? Or does "should" mean "should if possible"? That is, does the policy set a requirement? Or an aspiration? Or something else?

For now, the Court reads the complaint in the strongest sense, meaning that Cook County has a policy requiring dental care within three business days. That reading may or may not be right, and it might not pan out in discovery, but that's how the Court reads it in the meantime.

A dental assistant sets the schedule. Specifically, a dental assistant at the "divisional dental clinic" receives request forms, and then figures out when inmates can have appointments. *Id.* So the dental assistants are in charge of administering the policy – they need to book the appointments and make sure that inmates receive a dental visit within three days (again, if they're in significant pain). *Id.* A dental assistant has "complete responsibility over this matter" of scheduling dental appointments. *Id.* at ¶ 15; *id.* at ¶ 16 (referring to the "policy to delegate scheduling responsibility to the dental assistant").

On December 3, 2018, Harvey submitted a Health Service Request Form indicating that he was experiencing "a high level of pain." *Id.* at ¶ 8. He doesn't state in the complaint what level of pain he included on his form (meaning # out of 10). At first glance, the allegations do not make clear whether Harvey's form triggered the Jail's policy about seeing a dentist within three business days.

Read in Plaintiff's favor, the Court construes the complaint to allege that he reported in his request form that his pain was greater than 5 out of 10. That's consistent with his characterization of the pain level as "high," and it is consistent with the surrounding allegations, too.[1]

---

[1] A neighboring paragraph alleges that records from a visit on December 18, 2018 "show plaintiff complained he had been in pain for two weeks rated '10/10.'" *See* Am. Cplt., at ¶ 9 (Dckt. No. 44). One way to read that paragraph is that Plaintiff stated in his medical request form *on December 3* that his pain was 10/10, and that his pain continued at that level through December 18. (Strictly speaking, two weeks before December 18 is December 4, and he submitted the form on December 3. So maybe the 10/10 did not exist on December 3. But maybe Harvey meant "two weeks" in a more colloquial, in-the-ballpark sense.) Another way to read that paragraph is that Plaintiff told the dentist on December 18 that his pain was at the level of 10/10 for the past two weeks. In short, it is not entirely clear if Harvey put "10/10" on his form on December 3, or if he gave that number for the first time during the December 18 appointment. But another paragraph sheds some light. The proposed class definition suggests that Harvey did, in fact, complain about a toothache with pain of greater than 5 out of 10. The proposed class definition includes "[a]ll persons assigned to Division 10 at the Cook County Department of Corrections . . . who submitted a written 'Health Service Request Form' complaining of a toothache rated 6 or greater and did not receive an evaluation by a dentist for at least 14 days after submitting the request." *Id.* at ¶ 22. It's fair to read the complaint to allege that Plaintiff is in his own proposed class.

On December 18, 2018, Harvey saw the dentist. *Id.* at ¶ 9. So he didn't see a dentist within three business days. It took more than two weeks.

At the appointment, Harvey told the dentist – Dr. Brenda Taylor – that his pain over the previous two weeks was "10/10." *Id.* Dr. Taylor diagnosed him with "'poor' oral hygiene" and referred him to Stroger Hospital's oral surgery clinic for a tooth extraction. *Id.* The referral specified that "tooth #32" needed pulling. *Id.*

Harvey doesn't mention whether the referral specified a timeline for the extraction. But nearly a month later, on January 14, 2019, Harvey had another appointment with Dr. Taylor. *Id.* at ¶ 10. He again complained of pain in tooth #32. *Id.*

Ten days later, on January 24th, Harvey saw the oral surgeon at Stroger Hospital. *Id.* at ¶ 11. He complained again of pain in tooth #32, and in tooth #14. *Id.* The oral surgeon extracted both teeth. *Id.*

Harvey now brings a claim about the delayed appointments and the delayed extractions. From the date when he first complained of his pain (December 3) to the date of the extraction (on January 24), Harvey waited 52 days. And while he waited, "he was in significant pain." *Id.* at ¶ 12.

Harvey alleges that he suffered an injury because of "systemic deficiencies with the scheduling of inmates for dental appointments." *Id.* at ¶ 13. These deficiencies "render dental treatment constitutionally inadequate for all inmates with serious dental ailments." *Id.*; *see also id.* at ¶ 16 ("[H]undreds of patients at the Jail suffer gratuitous dental pain because of the policy to delegate scheduling responsibility to the dental assistant.").

Harvey alleges that the lack of an on-site oral surgeon contributed to his injury, too. *Id.* at ¶¶ 17–20. The Cook County Jail formerly employed an on-site oral surgeon, who would

evaluate inmates within seven days. *Id.* at ¶¶ 17–18. But the Jail eliminated the position in 2007

due to budget cuts. *Id.* at ¶ 18. So extractions now occur off-site, at Stroger Hospital Oral

Surgery Clinic. *Id.* Harvey claims that when there was an on-site oral surgeon, an oral surgeon

evaluated inmates within seven days. *Id.* at ¶ 17. But the new off-site policy "routinely takes

more than one month to schedule and facilitate treatment." *Id.* at ¶ 20.

Harvey sued Sheriff Dart and Cook County in May 2019. *See* Cplt. (Dckt. No. 1). He

filed an amended complaint in May 2020. *See* Am. Cplt. (Dckt. No. 44). In his amended

complaint, he brings claims against Sheriff Dart and Cook County under section 1983 for

inadequate medical care. "As a direct and proximately [sic] result of defendants' failure to

correct this obvious defect in the scheduling of patients for dental care, including the scheduling

practice for the Stroger Hospital Oral Surgery Clinic, plaintiff experienced gratuitous pain and

was deprived of rights secured by the Fourteenth Amendment to the Constitution of the United

States." *Id.* at ¶ 21.

Defendants moved to dismiss. *See* Mtn. to Dismiss (Dckt. No. 46). They argue that the

amended complaint fails to state a claim under *Monell v. Department of Social Services of the*

*City of New York*, 436 U.S. 658 (1978).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not

the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510,

1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-

pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor.

*AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must

give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### Discussion

Harvey does not separate his complaint into different counts or categories of injury. Even so, Defendants read the complaint as comprising two separate claims:  a failure to see a dentist in a timely manner, and a failure to see an oral surgeon in a timely manner.[2]  Both claims allege inadequate medical care.

Harvey appears to agree with Defendants' reading.  In his response to the motion to dismiss, he states that his complaint "alleges that a scheduling policy *and* staffing deficiency at the jail's dental facility" caused his injury.  *See* Pl.'s Resp. to Mtn. to Dismiss, at 1 (Dckt. No. 49) (emphasis added).  The scheduling policy involves the role of the dental assistant in scheduling dental appointments (meaning, presumably, dentists at the Jail).  *See* Cplt., at ¶ 7 (Dckt. No. 1) (alleging that the dental assistant is in charge of scheduling patients to see "the dentist," without mentioning the off-site oral surgeons).[3]  And the staffing deficiency means no on-site oral surgeon.

---

[2]  Defendants argue that Harvey's complaint "*must* be dismissed under Rule 10(b)" because it "seems to allege multiple claims founded on separate transactions or occurrences."  *See* Defs.' Mtn. to Dismiss, at 7 (Dckt. No. 46) (emphasis added).  But the language of Rule 10(b) is discretionary, not mandatory:  "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  *See* Fed. R. Civ. P. 10(b).  Defendants argue that the lack of separate counts in the amended complaint makes it difficult for them to understand the allegations.  But Defendants have interpreted the complaint to assert only two claims, and Harvey appears to agree with that interpretation in response to the motion.  It is not confusing or difficult to follow, so the Court declines to dismiss the complaint on those grounds.

[3]  It is not entirely clear from the complaint whether the dental assistants schedule appointments with off-site oral surgeons at Stroger Hospital, *plus* book the appointments with the dentists at the Jail.  And if the dental assistants do both tasks, it is not clear if Plaintiff is challenging their role in both.  Here, the

So the Court will follow their lead, and read the complaint the same way.

Harvey sued Sheriff Dart in his official capacity (only), along with Cook County, so his claims must meet the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "The liability of the Sheriff's Department and of the County is derivative of [Dart's] official-capacity liability, and the official-capacity liability is subject to [the] holding in *Monell* . . . ." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citing *Monell*, 436 U.S. at 658).

To state a claim against a local government, a plaintiff must allege liability through one of three routes:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority."

*See Johnson v. Cook County*, 526 F. App'x. 692, 695 (7th Cir. 2013) (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005)); *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

A plaintiff also must allege causation, and allege that the policy or custom was "the moving force" behind the constitutional violation. *See Estate of Sims ex rel. Sims*, 506 F.3d at 514 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "The central question is

_____

Court concludes that delegating the scheduling of appointments for dental care gives rise to a claim, regardless of whether it involves appointments with on-site dentists, off-site oral surgeons, or both.

always whether an official policy, however expressed . . . caused the constitutional deprivation. It does not matter if the policy was duly enacted or written down, nor does it matter if the policy counsels aggressive intervention into a particular matter or a hands-off approach." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

This case involves policies about two varieties of delegation – inside the Jail, and outside the Jail. The Jail delegated to dental assistants the task of scheduling dental appointments. So, that's an in-house delegation. The Jail also delegated to Stroger Hospital the task of performing oral surgery. That's delegation through outsourcing.

In each case, Plaintiff cannot challenge the delegation itself. That is, he cannot challenge the decision to have dental assistants book the appointments, or the decision to use an outsider to pull teeth. Those decisions, in and of themselves, are not problematic within the meaning of *Monell*. Jails always need to decide who does what, and *Monell* does not require any specific allocation of tasks.

But an issue arises when the Jail knows that the delegation means that inmates are not receiving medical care that passes constitutional muster. Knowledge of repeated constitutional violations can give rise to liability. *See, e.g.*, *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) (affirming a finding of *Monell* liability where the evidence showed the organization condoned its employees' repeated decisions to ignore its policies).

## I.      The Jail's Scheduling Policy

The first part of the claim is about scheduling dental appointments. He faults the Jail for delegating the task of booking the appointments.

The Jail has a policy of giving inmates a dental appointment within three business days if they complain of pain that is greater than 5 out of 10. *See* Am. Cplt., at ¶ 7 (Dckt. No. 44). But Harvey doesn't complain about that policy. He *likes* that policy.

Instead, he complains about how the Jail implements the policy of making appointments and providing care within three days. The Jail has a policy of delegating the scheduling – meaning the actual booking of the appointments – to dental assistants. *Id.* ("The dental assistant assigned to the divisional dental clinic is responsible for scheduling patients to be evaluated by the dentist after receipt of the health service request form seeking treatment by a dentist."); *id.* at ¶ 14 (referring to "scheduling practices, particularly delegating scheduling decisions to the dental assistants"); *id.* at ¶ 16 (referring to the "policy to delegate scheduling responsibility to the dental assistant").

So, the Jail has a policy about giving inmates a dental visit within three business days, if they suffer from significant pain. And when carrying out that policy, the Jail has a subsidiary policy – dental assistants must book the appointment.

Harvey alleges that he indicated a "high level of pain" on his Health Service Request Form. *Id.* at ¶ 8. Once he submitted that form, it was up to the dental assistant to schedule an appointment so that he saw a dentist within three business days. But instead of seeing a dentist right away, Harvey had to wait a few weeks. *Id.* at ¶ 9.

Harvey blames the delay on that secondary policy of delegating scheduling decisions to dental assistants. In response, Defendants argue that the practice of using dental assistants to book appointments was not the "moving force" behind the alleged violations. *See* Defs.' Mtn. to Dismiss, at 4–6 (Dckt. No. 46).

9

"The critical question under *Monell*, reaffirmed in *Los Angeles County v. Humphries*, is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson*, 849 F.3d at 379. "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* at 127.

The complaint is clear that Harvey didn't like the policy of delegating to dental assistants. However, it's not clear which *Monell* route his allegations about this policy fall under. Is he alleging the delegation policy is an express policy leading to a constitutional deprivation? Or is Harvey alleging that it leads to a "wide-spread" practice that, although not authorized, constitutes the force of law?

A policy of delegating the scheduling of appointments, in and of itself, cannot be the moving force behind Harvey's injury. *Every* policy must be applied by employees. Entities delegate everything to human beings – *someone* has to do it. The decision to assign a specific task to certain people can't give rise to liability because tasks don't perform themselves.

The Jail had to delegate the scheduling of the appointments to *someone*. Merely delegating a facially constitutional policy does not give rise to *Monell* liability. *See Holmes v. Sheahan*, 930 F.2d 1196, 1201–02 (7th Cir. 1991) ("[W]ithout more evidence pointing to deficiencies in these procedures, [the plaintiff's] story suggests a problem with personnel and the implementation of policy, . . . but not a problem with County policy itself."); *see also Thomas v. DuBois*, 2020 WL 2092426, at *4 (S.D.N.Y. 2020) ("In other words, any violation of Plaintiff's

10

constitutional rights was caused by the *failure* to follow a policy, not the policy itself.  By definition, such allegations fail to state a claim under *Monell*.") (emphasis in original); *Steele v. Rowles*, 2009 WL 2905903, at \*9 (E.D. Tex. 2009), *aff'd*, 389 F. App'x 347 (5th Cir. 2010) ("Assuming Mr. Steele's constitutional rights were violated, it was the individual employees who violated his rights when they did not follow the policies and procedures that were in place. Defendant Rowles, in his official capacity, and Jasper County cannot be held liable for the employees' actions in this case.") (citation omitted).

Harvey's issue with the delegation policy is that the Jail does not follow its own policy of giving inmates a dental visit within three days.  That is, he is alleging that the Jail is not enforcing its own policy.

In many instances, a municipality is not liable under *Monell* if the employee fails to follow the policy.  *See Bradich ex rel. Estate of Bradich v. City of Chicago*, 413 F.3d 688, 680 (7th Cir. 2005) ("None of Chicago's policies is constitutionally inadequate; indeed, the Estate does not take issue with any of them.  Its argument, rather, is that Chicago did not ensure that all of its employees followed all of its policies all of the time.  That theory of liability is incompatible with *Monell*."); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 532 n.3 (7th Cir. 2000) (finding that simply failing to follow certain policies, without evidence of personnel regularly ignoring established policies, did not give rise to *Monell* liability); *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992) ("Liability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy.").

If employees aren't following the policy, then the policy itself isn't causing the injury. Instead, it's the employee not following the policy that causes the injury.  *Monell* requires that

11

the County itself, not its employees, be behind the violation.  *See Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011) ("A person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government . . . .").  Generally, if the municipality has a lawful policy that the employees aren't following, that is not on the municipality (without more).

But the situation changes if the municipality has knowledge that the employees in question are repeatedly engaging in conduct that violates constitutional rights.  "[M]unicipal liability can also be demonstrated indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers.'"  *See Woodward*, 368 F.3d at 927 (quoting *Estate of Novack*, 226 F.3d at 531).  This indirect method is the second route of alleging *Monell* liability – a "wide-spread practice."  Thus, when personnel "regularly" or "routinely" ignore facially constitutional policies, municipalities can be liable.  *See e.g.*, *id.*; *Estate of Novack*, 226 F.3d at 532 n.3 ("[T]he 'bad acts' from which municipal liability may be indirectly inferred must be a 'pattern of conduct or a series of acts violative of constitutional rights.'") (citation omitted); *Bradich*, 413 F.3d at 690 ("The Estate does not argue that the City *systematically* fails to enforce its written policies and instead maintains informal policies that violate the Constitution.") (emphasis in original).

Harvey alleges that "there have been systemic deficiencies with the scheduling of inmates for dental appointments that render dental treatment constitutionally inadequate for all inmates with serious dental ailments."  *See* Am. Cplt., at ¶ 13 (Dckt. No. 44).  He says Defendants "have been on notice" since at least July 27, 2017, "that the scheduling practices, particularly

12

delegating scheduling decisions to the dental assistants, are a [sic] barriers to timely care." *Id.* at ¶ 14. And "Defendants Dart and Cook County are aware that hundreds of patients at the Jail suffer gratuitous dental pain because of the policy to delegate scheduling responsibility to the dental assistant." *Id.* at ¶ 16.

Harvey admits that he likes the facially constitutional policy, but he also alleges that Defendants knew about systemic, repeated deficiencies in scheduling. So Harvey identified, indirectly, Defendants' knowledge of systemic issues with policy compliance – a "wide-spread practice" – and their repeated inaction – the moving force behind his injury.

This indirect method cannot become a backdoor way to impose *respondeat superior* liability. Holding the municipality liable for its agent's failure to follow directions would be *respondeat superior* liability. But the requirement that the municipality must *know* of the systemic issues prevents the backdoor from opening. *Cf. Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) ("What separates [failure to train] liability from traditional *respondeat superior* liability is a known pattern of tortious conduct demonstrating the need for additional training, 'rather than a one-time negligen[ce].'") (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407–08 (1997)).

Defendants' motion to dismiss Harvey's claim for his delayed appointments based on the policy of delegation is denied. The claim can go forward to the extent that Plaintiff is alleging that Defendants knew about a widespread practice of providing constitutionally inadequate dental care by delaying appointments.

## II.     The Jail's Lack of an On-Site Oral Surgeon

Harvey also alleges that he suffered pain for an extended period of time because of the Jail's failure to offer on-site oral surgery. *See* Am. Cplt., at ¶ 21 (Dckt. No. 44). Without an

on-site oral surgeon, detainees must wait to go to the Stroger Hospital Oral Surgery Clinic. *Id.* at ¶ 18. "It routinely takes more than one month to schedule and facilitate treatment." *Id.* at ¶ 20. In Harvey's case, he received a referral for an extraction on December 18, 2018, but he waited until January 24, 2019 to see the oral surgeon to pull the tooth. *Id.* at ¶¶ 9, 11.

Once again, the complaint is not clear about which *Monell* route Harvey is attempting to drive through. Harvey seems to argue that the decision to send inmates off-site for oral surgery is an express policy causing a constitutional violation. *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, at 7 (Dckt. No. 49) ("[P]laintiff alleged specific facts why the absence of an oral surgeon at the jail deprives inmates timely access to treatment for objectively serious dental conditions."). But the express policy route once again fails to state a claim under *Monell.*

The express policy theory applies where a policy explicitly violates a constitutional right when enforced. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). For example, imagine if the Jail had a policy against providing detainees dental care altogether. An express policy to deny medical care to detainees suffering from pain would give rise to a potential claim.

But a policy of providing dental care off-site is facially constitutional. A policy to provide dental care off-site expressly provides for medical care. The policy involves *where* the detainee receives care, not *whether* the detainee receives care, or *how soon* the detainee receive it. It does not, facially, deprive a detainee of any constitutional rights.

The decision to outsource medical care for inmates cannot be a sword or a shield. The decision to use a private provider, in and of itself, cannot give rise to liability. But on the flipside, a state agency cannot wash its hands of liability by delegating medical care to a private party when the state agency knows that the medical care does not satisfy constitutional requirements. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 967 (7th Cir. 2019);

14

*King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) ("If the County is 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [it] may not adopt a policy of inaction.'") (quoting *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)).

Harvey claims that the outsourcing policy created delays, and thus caused gratuitous pain. He argues that the enforcement of the off-site dental care policy violated his constitutional rights. But the Seventh Circuit has rejected a challenge to a facially constitutional policy under the *express* policy route based on how it is enforced, unless an omission in the policy caused the constitutional deprivation (such as a failure to have a policy or training). *See Rasche v. Beecher*, 336 F.3d 588, 599 (7th Cir. 2004); *Calhoun*, 408 F.3d at 380.

Harvey is not alleging that omissions in the policy caused his injuries. Instead, he is once again focused on the application of the policy. That is, Harvey is challenging a facially constitutional policy by arguing that the Jail is not carrying it out in a way that gives him adequate care. But that's not a challenge to the policy itself.

But maybe Harvey is trying to go through another *Monell* route. Reading the complaint broadly in favor of the plaintiff, Harvey might be claiming that the application of the policy is a "wide-spread practice." That is, maybe he is alleging that the practice of denying prompt medical care is so permanent and well-settled as to constitute a "custom or usage" with the force of law, even if it is not authorized by written law and express policy. *Johnson*, 526 F. App'x. at 695 (quoting *Calhoun*, 408 F.3d at 379). Under this route, the application of the off-site oral surgeon policy creates a widespread practice of substantially delayed dental care.

A plaintiff alleging a *Monell* claim needs to provide "some specific facts" to support the legal claims asserted in the complaint. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th

15

Cir. 2011). But "a *Monell* claim can survive a motion to dismiss 'even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing.'" *Brown v. Dart*, 2015 WL 4035568, at \*2 (N.D. Ill. 2015) (quoting *Riley v. County of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)); *see also Wade v. Rizzuto*, 2016 WL 1247472, at \*5 (N.D. Ill. 2016).

Defendants argue that Harvey "provides no specific facts to support his claim with respect to how not having an oral surgeon onsite at the Jail, or how scheduling detainees for oral surgery at Stroger Hospital, deprived him of timely access to dental care." *See* Mtn. to Dismiss, at 6 (Dckt. No. 46).

True enough. But Harvey has described his delayed extraction, which he attributes to the Jail's decision to not offer on-site oral surgery. This delay, he claims, would not have occurred if the Jail still had an on-site oral surgeon. Harvey alleges that inmates received care within seven days when there was an on-site oral surgeon, but now that surgery takes place at a local hospital, it "routinely takes more than one month to schedule and facilitate treatment." *See* Am. Cplt., at ¶¶ 17, 20 (Dckt. No. 44).

So Harvey has identified a policy or practice – off-site dental extractions – that is the moving force behind his injury. And he alleges that the delayed treatment caused him "gratuitous" and "significant" pain. *See* Am. Cplt., at ¶¶ 12, 21 (Dckt. No. 44); *see also Holmes v. Sheahan*, 930 F.2d 1196, 1200 (7th Cir. 1991) ("We have previously held that deliberate indifference to inmates' medical needs may indeed be demonstrated by proving 'that there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.'") (quoting *Benson v. Cady*, 761 F.2d 335, 341 (7th Cir. 1985), *abrogated on other grounds by Henderson v. Wilcoxen*,

16

802 F.3d 930, 933 (7th Cir. 2015)); *Brown*, 2015 WL 4035568, at *3 (N.D. Ill. 2015) ("[T]he elimination of the orthopedic clinic at issue in this case is sufficiently related to the claimed injury – Brown's failure to receive proper orthopedic medical care – to establish a causal relationship between the two.").

The Complaint is bare-bones in its factual allegations. But "it is sufficient to place Dart on notice of the nature of the claims against him and for the Court to find that [Harvey] has 'give[n] enough detail about the subject-matter of the case to present a story that holds together.'" *Brown*, 2015 WL 4035568 at *3 (quoting *McCauley*, 671 F.3d at 616). Harvey's claim may or may not survive summary judgment. But for now, the Court will allow it to go forward, especially given the procedural posture of the case (with discovery completed). The evidence may shed more light than the allegations.

The Court therefore grants in part and denies in part the motion to dismiss about the oral surgery. The claim can go forward to the extent that Plaintiff is alleging that Defendants knew about a widespread practice of providing constitutionally inadequate dental care by using off-site oral surgeons.

## Conclusion

For these reasons, Defendants' motion to dismiss is granted in part and denied in part. The Court grants the motion and dismisses the claim to the extent that it challenges the policy of delegating the scheduling of appointments to dental assistants (without more). The Court grants the motion and dismisses the claim to the extent that it challenges the policy of providing dental care off-site (again, without more). The Court denies the motion to the extent that it argues that there is a widespread practice of denying timely dental appointments and dental care to detainees. More specifically, the claim survives to the extent that it alleges that Defendants

17

knew that (1) delegating scheduling to dental assistants, and (2) using off-site oral surgeons, led

to constitutionally inadequate medical care for detainees.


Date:   September 20, 2021

                                           Steven C. Seeger
                                           United States District Judge